

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AA
F. #2024R00143

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 4, 2025

<u>By Email and ECF</u>

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Michael Kuilan
     <u>Criminal Docket No. 24-130 (BMC)</u>

Dear Judge Cogan:

  The government respectfully submits this memorandum in connection with the sentencing of defendant Michael Kuilan, which is scheduled for March 11, 2025, at 2:15 p.m. On September 23, 2024, the defendant pled guilty to (a) one count of distributing and possessing with intent to distribute fentanyl and heroin, and (b) one count of being a felon in possession of a firearm. The defendant sold fentanyl-laced heroin to his co-defendant, who ultimately sold the narcotics to Cecilia Gentili, causing her to overdose and die. For this and the other reasons stated below, the government respectfully requests that the Court impose a sentence within the Guidelines range of 262 to 327 months' imprisonment.

I. <u>Background</u>

  A. <u>Offense Conduct</u>

  On the morning of February 6, 2024, Cecilia Gentili was found dead in her home. PSR ¶ 11. An autopsy of Gentili's body reflected lethal concentrations of fentanyl and heroin. PSR ¶ 14. Text message evidence from Gentili's phone showed that she and co-defendant Antonio Venti had arranged a transaction for a "bundle" between January 30, 2024, and February 5, 2024, in the days leading up to her death. PSR ¶ 16.

  Text message evidence from Venti's phone showed that between January 30, 2024, and February 1, 2024, Venti and Kuilan discussed a transaction for narcotics to take place on February 1, 2024 in Williamsburg, Brooklyn. PSR ¶ 18. Venti also mentioned that he had to "get something for a friend." <u>Id.</u> The timing of these text messages correlated with Gentili's request that Venti purchase a "bundle" for her on January 30, 2024. <u>Id.</u> Financial records confirmed that Gentili paid Venti on January 30, 2024, for a "bundle," and that on February 4,

2024, and February 12, 2024, Venti paid Kuilan. PSR ¶ 19. These transactions correspond with Kuilan and Venti's discussions about narcotics purchases. Additionally, location data confirmed that Venti and Kuilan's phones were in the same location in Williamsburg, Brooklyn on February 1, 2024. Id.

On March 12, 2024, pursuant to a search warrant, law enforcement officers searched Kuilan's residence in Brooklyn, which he shares with his elderly grandmother, and found in his bedroom approximately 850 glassine envelopes containing suspected narcotics, a digital scale, and an operable .45 caliber handgun. PSR ¶ 21. Subsequent testing revealed that the glassine bags contained 32.2642 grams of fentanyl, which represents many thousands of lethal doses. Id. The search also revealed a digital scale and ammunition.

In addition, during the investigation, Kuilan admitted that, after learning that agents were searching his residence, he destroyed a cellular telephone that contained additional evidence of his narcotics distribution, and lost yet another cellular telephone. PSR ¶ 22.

B. Criminal History

On or about March 12, 2012, the defendant was convicted and sentenced to one year of conditional discharge for criminal possession of a controlled substance in the seventh degree. PSR ¶ 46. Specifically, on November 1, 2011, a NYPD officer observed the defendant engaging in a narcotics transaction. Id. The defendant possessed glassine envelopes containing heroin and an additional 24 glassine envelopes containing heroin were also recovered from the defendant's car. Id. On or about December 19, 2012, the defendant was discharged from probation for this offense. Id.

On or about April 26, 2005, the defendant was convicted and sentenced to between two to four years of custody and six months of license suspension for criminal possession of a controlled substance in the fifth degree. PSR ¶ 45. Specifically, on March 4, 2004, a NYPD officer observed the defendant engaging in an alleged narcotics transaction by receiving cash in exchange for a small object. Id. Shortly thereafter, another NYPD officer observed the defendant possessing heroin. Id. On or about July 10, 2007, the defendant was released to parole. Id. On or about July 10, 2009, the defendant was discharged from parole. Id.

On or about April 16, 2002, the defendant was convicted and sentenced to between three to nine years of custody and six months of license suspension for criminal possession of a controlled substance in the third degree. PSR ¶ 44. Specifically, on February 3, 2002, a NYPD officer observed the defendant and another individual possessing heroin weighing more than four ounces. Id. On or about November 21, 2002, the defendant was released to parole. Id. On or about May 13, 2005, the defendant's parole was revoked. Id.

The criminal convictions above, largely due to their age, yield a criminal history score of zero, and a Criminal History Category of I. PSR ¶¶ 47-48.

C. Procedural History

On March 19, 2024, the defendant was charged by complaint with one count of distributing and possessing with intent to distribute fentanyl and one count of being a felon in

possession of a firearm.  ECF No. 1.  On March 19, 2024, the defendant was arrested in connection with the complaint and arrest warrant.  PSR ¶ 19.

On March 29, 2024, a grand jury returned an Indictment charging the defendant with distributing heroin and fentanyl that caused the death of Cecilia Gentili (Count One), conspiracy to distribute and possess with intent to distribute heroin and fentanyl (Count Two), distribution and possession with intent to distribute heroin and fentanyl (Count Three), and being a felon in possession of a firearm (Count Four), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846, 18 U.S.C. §§ 922(g)(1) and 924(a)(8).  ECF No. 10.  The defendant was arrested pursuant to a warrant related to the indictment.

On September 23, 2024, the defendant pled guilty, pursuant to a plea agreement, to Counts Three and Four of the Indictment.  Count Three charged distribution and possession with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  Count Four charged possession of a firearm as a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).  PSR ¶¶ 1-3.

D. Conduct on Pretrial Release

Since the defendant's pretrial release on March 19, 2024, he has repeatedly tested positive for use of narcotics, including one positive test for cocaine and three positive tests for marijuana, most recently on December 24, 2024.  PSR ¶¶ 8-10, 67.  Moreover, the government is aware that the defendant left his home without authorization to purchase cigarettes in violation of his home detention.  In text messages with a family member, on or about March 31, 2024, the defendant wrote:

| | |
|---|---|
| Defendant: | you got 1 cigg and limk when you go down so I can give you money for ciggs |
| Family Member: | Yes come up |
| Defendant: | I got the ciggs so dont get me none ok |
| Family Member: | Ok |
| Family Member: | How |
| Defendant: | I ran lol |
| Family Member: | Please be careful don't risk it |
| Family Member: | Next time I will run down |

See MK_DOJ_018557-MK_DOJ_018573.

3

E.  Defendant's Sentencing Submission

The defendant's sentencing memorandum, which includes the evaluation and opinions of mitigation specialists, outlines his background, substance use history, and mitigating factors for sentencing. Def. Mem. 3-4, ECF No. 55-1. The memorandum highlights his upbringing, including the early loss of his father, exposure to crime, and struggles with substance abuse. Id. at 6-7. The memorandum highlights the defendant's care for his wife and family and argues that incarceration would harm them. Id. at 9-10, 20. The letter argues for a sentence focused on rehabilitation and treatment. Id. at 22-23.

II.  Guidelines Calculation

The PSR calculated the Guidelines as follows:

Count Three – Heroin and Fentanyl Distribution

| | | |
|---|---|---|
| Base Offense Level (U.S.S.G. § 2D1.1(a)(2)) | | 38[1] |
| Plus: | Firearm Possession (U.S.S.G. § 2D1.1(b)(1)) | +2 |
| Plus: | Obstruction of Justice (U.S.S.G. § 3C1.1) | +2 |
| Total: | | 42 |

Multiple Count Analysis (U.S.S.G. §§ 3D1.1, 3D1.2, 3D1.3) [2]

| | |
|---|---|
| Highest Adjusted Offense Level (Counts Three and Four group) | 42 |

Accounting for the timely acceptance of responsibility, the defendant's total offense level is 39. PSR ¶ 42. Assuming a Criminal History Category of I, the advisory Guideline imprisonment range is 262 to 327 months. PSR ¶¶ 31-42. In his plea agreement, the defendant stipulated to this calculation. Plea Agreement ¶ 2. The government agrees with the calculation.

---

[1] In the plea agreement, the defendant stipulated that the controlled substances he distributed resulted in the death of the Cecilia Gentili and agreed that the defendant's distribution of controlled substances resulting in the death of Cecilia Gentili constituted part of the offense of conviction for purposes of U.S.S.G. § 2D.1.1(a)(2). Accordingly, pursuant to U.S.S.G. § 2D1.1(a)(2), the base offense level is 38.

[2] For Count Four (felon in possession of a firearm), the base offense level is 24 (U.S.S.G. § 2K2.1(a)(2)), plus four levels because it was committed in connection with another felony (U.S.S.G. 2K2.1(b)(6)(B)), for a total offense level of 28. Because Count Four is grouped with Count Three, and because Count Four carries a lower offense level, the Guidelines range for Count Three drives the calculation.

III.     Legal Standard

This Court "shall impose a sentence sufficient, but not greater than necessary," to achieve the goals of sentencing. 18 U.S.C. § 3553(a). "[I]n determining the particular sentence to be imposed," the Court "shall consider" certain factors set forth in § 3553(a), including the applicable Guidelines range. Id. The Guidelines range "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49, 51 (2007). Still, the Court "should not presume" the reasonableness of the calculated Guidelines range and "must make an individualized assessment based on the facts presented." Id. at 50. The Court must "adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Id. at 51.

IV.     The Appropriate Sentence

The Section 3553(a) factors counsel in favor of a sentence within the Guidelines range of 262 to 327 months' imprisonment. The defendant committed a serious crime with irrevocable consequences—dealing drugs that killed Cecilia Gentili—and has a decades-long history of dealing dangerous narcotics for profit. A sentence within the Guidelines range is sufficient but not greater than necessary to reflect the nature and circumstances of the offense and the history and characteristics of the defendant, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct.

The nature and circumstances of the offense are incredibly serious. See 18 U.S.C § 3553(a)(1). The defendant sold fentanyl-laced heroin to his co-defendant, who sold the drugs to Cecilia Gentili. The drugs sold by the defendant not only furthered his co-defendant's opioid addiction, they ultimately caused Gentili's fatal overdose and death. For this reason, a sentence within the Guidelines range would reflect the seriousness of the offense and provide just punishment. See 18 U.S.C. § 3553(a)(2)(A).

Gentili's death represents the loss of an outspoken advocate on behalf of a marginalized community. But her death is one of tens of thousands of such tragedies across this country. The United States is facing an unprecedented drug overdose crisis that has taken over one hundred thousand lives, driven primarily by synthetic opioids such as fentanyl. Fentanyl is 30-50 times more potent than heroin. According to the National Institutes of Health, in 2023, which is the most recent year per-drug data that is available, fentanyl or other synthetic opioids were the cause of 81,083 drug overdose deaths in the United States. The defendant is not individually responsible for the magnitude of this crisis, but he is accountable for his choice to help perpetuate it—and the seriousness of the crisis thus warrants commensurately serious punishment.

The defendant's criminal history and the evidence in this case demonstrate that he is a career opioid dealer, who has sold deadly drugs since approximately 2002, and who possessed a firearm in connection with his drug dealing. A search of the defendant's bedroom, in an apartment he shared with his elderly grandmother, revealed a staggering quantity of fentanyl: more than 850 glassine envelopes containing a total weight of 32.264 grams of fentanyl. Despite many prior drug dealing convictions and lenient sentences, the defendant has

5

continued to sell dangerous opioids. Accordingly, a Guidelines sentence is necessary to specifically deter the defendant and protect the community from future drug sales. Moreover, the Court should punish the defendant for using his grandmother's home to store distribution quantities of fentanyl and a firearm.[3]

Principles of general deterrence counsel in favor of a Guidelines sentence. Such a sentence would send an important message to the defendant and others considering selling opioids and other deadly drugs, that such criminal conduct will be met with serious punishment. See 18 U.S.C. §§ 3553(a)(2)(B) and (C). Without a meaningful and substantial penal consequence, there is limited incentive for others like the defendant to refrain from selling illegal drugs, especially lethal opioids, to members of our community.

V.      The Court Should Remand the Defendant at Sentencing

The Bail Reform Act, as amended, governs whether a defendant is eligible for release pending sentencing. See 18 U.S.C. §§ 3143(a)(2), 3145(c). For a defendant found guilty of certain offenses—including drug offenses carrying maximum sentences of ten or more years in prison or a crime of violence—Section 3143(a)(2) provides that the court "shall order" that the defendant "be detained unless": (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or (ii) an attorney for the government has recommended that no sentence of imprisonment be imposed on the person; *and* (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community. See 18 U.S.C. § 3143(a)(2) (emphasis added); see also id. § 3142(f)(1)(A)-(C) (defining the offenses to which Section 3143(a)(2) applies).

In this case, because the defendant is convicted of committing a drug offense carrying a maximum sentence of ten years or more, Section 3143(a)(2) requires the defendant's remand unless he can show: (1) "that there is a substantial likelihood that a motion for acquittal or new trial will be granted;" *and* (2) that, by clear and compelling evidence, he is unlikely to flee or pose a danger under section 3143(a)(1).

Here, the defendant has not (and cannot) show that there is a substantial likelihood that a motion for an acquittal or new trial will be granted, since the defendant has pleaded guilty. Under the facts of this case, that is enough to remand the defendant upon sentencing. In addition, the defendant has not abided by the terms of his pretrial release, which undermine any argument against flight. He has continued to test positive for drug use on three separate occasions. PSR ¶¶ 8-10. Further, text messages reveal that the defendant left home, in

---

[3] The defendant argues that incarceration would negatively affect his family. This argument rings hollow, however, since the defendant was not living with his wife and children at the time of his arrest. Def. Mem. 9. Moreover, his children are both adults. The consequences faced by the defendant's family "are no greater than those faced by most criminal defendants who have a family," and, thus, no sentencing discount is inappropriate. See United States v. Faria, 161 F.3d 761, 763 (2d Cir. 1998).

contravention of his home detention order, without permission. Accordingly, the government respectfully requests that the defendant be remanded upon sentencing.[4]

VI.     Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a Guidelines sentence of imprisonment.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:     /s/ Adam Amir
Adam Amir
Assistant U.S. Attorney
(718) 254-6116

cc:     Clerk of Court (BMC) (by ECF)
Counsel of Record (by ECF)

---

[4] Nor is the government aware of any exceptional reason why the defendant's detention would not be appropriate. See 18 U.S.C. § 3145(c).